DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-appellant, Paul L. Williams ("Williams"), appeals the judgment of the Lawrence County Court of Common Pleas, whereby the trial court, pursuant to a jury trial, convicted Williams of one count of complicity to trafficking in crack cocaine in the vicinity of juveniles. For the following reasons, we affirm in part and reverse in part.
 {¶ 2} The Lawrence County Grand Jury indicted Williams on one count of complicity to trafficking in crack cocaine in the vicinity of juveniles, in violation of R.C. 2925.03(A)(1), R.C. 2925.03(C)(4)(d), and R.C. 2923.03, a felony of the second degree. Williams pled not guilty, and a jury trial ensued.
 {¶ 3} The State presented testimony that on January 4, 2007, the Lawrence County Drug Task Force completed a controlled purchase of crack cocaine through a confidential informant. The informant, Josephine Haas Dillard ("Dillard"), had previously *Page 2 
been charged with engaging in a pattern of corrupt activity. In exchange for assisting the task force, Dillard became eligible earlier for judicial release.
 {¶ 4} Dillard testified that she arranged to purchase crack cocaine from Williams through his co-defendant, Jennifer Gothard ("Gothard"). Gothard also testified against Williams in exchange for a sentence reduction. According to both women, Dillard told Gothard that she needed $400 worth of crack cocaine for Dillard's uncle. Gothard contacted Williams, also known as "P-Dub." The women drove Williams from Huntington, West Virginia, to Gothard's home in Ohio. Dillard then told Gothard and Williams that she needed to leave to get money for the crack cocaine from her uncle.
 {¶ 5} In fact, Dillard met with two task force members, Captain Chris Bowman ("Bowman") of the Ironton Police Department and Detective Aaron Bollinger ("Bollinger") of the Lawrence County Sheriffs Office. They searched her vehicle and person to ensure that she did not already have drugs in her possession. Then they provided her with $250 in marked bills and a video recording device.
 {¶ 6} Gothard testified that when Dillard returned, Williams gave Gothard a bag of $400 worth of crack cocaine to make the sale. Both women testified that Dillard informed Gothard that she could only buy $200 worth of crack cocaine. They further testified that they saw Williams remove the excess crack cocaine from the bag. He gave the bag to Gothard, who in turn gave it to Dillard. Dillard then gave Gothard $200 in cash. Dillard watched as Gothard gave the money to Williams. Both women testified that three minor children were present during the transaction.
 {¶ 7} With the sale complete, Dillard told Gothard and Williams that she needed to take the crack cocaine to her uncle. She in fact met with Bowman and Bollinger to turn *Page 3 
over the crack cocaine, the remaining $50 in marked bills, and the recording device. In addition to the eyewitness testimony of Dillard and Gothard, the State presented the video of the crack cocaine purchase to the jury.
 {¶ 8} The State also played a recording of an interview Williams participated in with law enforcement. During the interview, Williams acknowledged that he had been coming from Columbus to sell crack cocaine along Route 92 in Ohio and Kentucky since 2003. He described a typical trip to the area — the amount of crack cocaine he would bring, the amount of time it would take to sell the drugs, and the profit he would make. He explained that he never drove to the area because he did not have a valid license, so he would take the bus or have someone pick him up. When asked specifically about the incident described in his indictment, Williams responded, "I remember, I remember I came back down here but I don't remember the day that happened on though."
 {¶ 9} The jury found Williams guilty, and the trial court sentenced him to seven years of incarceration and three years of post-release control. The court further imposed a $10,000 fine on Williams and suspended his driver's license for three years following his release.
 {¶ 10} Williams failed to timely appeal his conviction, however, we granted his motion for leave to file a delayed appeal. Williams assigns four errors for our review:
 A criminal defendant is denied a fair trial when the State is permitted to introduce a police interview in which the defendant admits to other acts not at issue in the indictment. Fifth and Fourteenth Amendments, United States Constitution; Section 16, Article I, Ohio Constitution. (MIL Hearing Tr. 5-9; Trial Tr. 113-14; State's Exhibit F.)
 Trial counsel provided ineffective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution when he failed to object to the police interview being played for the jury. (Trial Tr. 418-19.) *Page 4 
 The trial court committed plain error by ordering Mr. Williams to pay a $10,000 fine without considering his present and future ability to pay, as required by R.C. 2929.19(B)(6). (Presentencing Investigation Report, 7-8; Sentencing Tr. 11; October 31, 2007 Judgment Entry.)
 Trial counsel provided ineffective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution when, prior to sentencing, trial counsel failed to file an Affidavit of Indigency on Mr. Williams'[s] behalf. (October 31, 2007 Judgment Entry; Sentencing Tr. 11.)
For ease of discussion, we address Williams's assignments of error in a different order.
 {¶ 11} In his first assignment of error, Williams contends that the trial court erred by allowing the State to introduce a recording of a police interview in which he admitted to involvement in drug transactions not at issue in the indictment. Specifically, Williams contends that the interview is inadmissible under Evid. R. 404(B). Even if the interview was admissible under that rule, Williams contends that the court should have excluded it as unfairly prejudicial under Evid. R. 403(A).
 {¶ 12} Initially, we note that Williams filed a motion in limine to exclude introduction of the recording at trial, and the court denied it. However, "[t]he denial of a motion in limine does not preserve any error for review." State v. Burton, Gallia App. No. 05CA3, 2007-Ohio-1660, ¶ 54, citing State v. Hill (1996), 75 Ohio St.3d 195, 202-203. To preserve an error for appeal, the evidence must be presented and then objected to at trial. Id. In this case, Williams did not object when the State presented the recording at trial.
 {¶ 13} Because Williams failed to raise this argument in the trial court, he has forfeited all but plain error. State v. Payne,114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 23. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim. R. 52(B). "A silent defendant has the burden *Page 5 
to satisfy the plain-error rule[,] and a reviewing court may consult the whole record when considering the effect of any error on substantial rights." State v. Davis, Highland App. No. 06CA21, 2007-Ohio-3944, ¶ 22, citing United States v. Vonn (2002), 535 U.S. 55, 59.
 {¶ 14} For a reviewing court to find plain error, the following three conditions must exist: (1) there must be an error, i.e., there must be a deviation from a legal rule; (2) the error must be plain, i.e., it must be an "obvious" defect in the trial proceedings; and (3) the error must have affected "substantial rights," i.e., it must have affected the outcome of the trial. State v. Barnes, 94 Ohio St.3d 21, 27,2002-Ohio-68. Furthermore, the Supreme Court of Ohio has stated that Crim. R. 52(B) is to be invoked "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 15} Under Evid. R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Although relevant and admissible under Evid. R. 404(B), evidence is still not admissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid. R. 403(A).
 {¶ 16} Even if we assume that the interview recording was inadmissible under Evid. R. 404(B) or 403(A), we conclude that the State presented overwhelming admissible evidence of Williams's guilt. The State presented the testimony of two eyewitnesses to Williams's involvement in the crack cocaine sale. In addition, the State showed the jury a video recording of the transaction, and the video clearly depicts the face of the man both *Page 6 
witnesses identified as Williams. Given this evidence, Williams has failed to demonstrate that the outcome of his trial would have been different but for admission of the recorded interview. Thus, he has failed to demonstrate that the trial court's admission of the statement affected a substantial right. Accordingly, we overrule Williams's first assignment of error.
 {¶ 17} In his third assignment of error, Williams contends that the trial court erred by ordering him to pay a $10,000 fine without considering his present and future ability to pay. Because Williams failed to raise this argument in the trial court, he has forfeited all but plain error. Payne at ¶ 23.
 {¶ 18} Under R.C. 2929.18(B)(1), when an offender commits a second degree felony violation of Chapter 2525 of the Revised Code, the sentencing court must impose on the offender a mandatory fine of at least $7,500, but not more than $15,000. See R.C. 2929.18(A)(3). However, if the offender "alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender." R.C. 2929.18(B)(1). Before ordering an offender to pay a financial sanction under R.C. 2929.18, the court must "consider the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(6).
 {¶ 19} Williams acknowledges that he failed to file an affidavit of indigency prior to sentencing. He argues, however, that the trial court failed to make a proper inquiry into his ability to pay the $10,000 fine it imposed on him. The State agrees that we should vacate the fine. Its rationale for doing so, however, appears to be based on Williams's *Page 7 
fourth assignment of error for ineffective assistance of counsel. ("Appellee agrees that had Appellant filed an Affidavit of Indigency that the Court would not have imposed the $10,000 fine.") The State does not address whether the trial court committed plain error when it imposed the fine based on the record before it.
 {¶ 20} We have consistently held that, "[a]lthough preferable for appellate review, a trial court need not explicitly state in its judgment entry that it considered a defendant's ability to pay a financial sanction. Rather, courts look to the totality of the record to see if the requirement has been satisfied." State v. Smith, Ross App. No. 06CA2893, 2007-Ohio-1884, ¶ 42, quoting State v. Ray, Scioto App. No. 04CA2965, 2006-Ohio-853, ¶ 26. The trial court complies with R.C. 2929.19(B)(6) "when the record shows that the court considered a pre-sentence investigation report that provides pertinent financial information regarding the offender's ability to pay [the financial sanction]." State v. Rickett, Adams App. No. 07CA846, 2008-Ohio-1637, ¶ 6, citing Smith at ¶ 42.
 {¶ 21} In State v. Rickett, we rejected the defendant's argument that the trial court failed to consider his present and future ability to pay before ordering that he pay restitution. Although the trial court did not state that it considered the defendant's present and future ability to pay, it did consider his pre-sentence investigation ("PSI") report. Id. The PSI report contained information regarding Rickett's "age, education, physical and mental health, and employment history." Id. Specifically, it demonstrated that he had difficulties with drug addiction, that he had problems maintaining employment, and that his wife had been supporting their family. Id. At the trial level, Rickett did not challenge any of the information in the report. Id.
 {¶ 22} We noted that the trial court was aware of Rickett's financial status when it *Page 8 
imposed the sanction. Id. at ¶ 7. Its order finding him indigent for purposes of appeal appeared immediately before the sentencing entry in the record. Id. However, "the fact that the trial court found Rickett to be indigent for purposes of appeal [did] not necessarily mean that the trial court failed to consider Rickett's present and future ability to pay." Id. We further noted that Rickett "was 27 years old at the time of sentencing and if he serves his full five-year sentence, he [would] leave prison at age 32." Id. Thus, we found that "[g]iven his age and the information provided in the pre-sentence investigation report, the trial court could reasonably conclude that [Rickett] would have the ability to pay the financial sanction in the future." Id.
 {¶ 23} Here, as in Rickett, the trial court did not explicitly state that it considered Williams's present and future ability to pay when it imposed the financial sanction. Like the trial court inRickett, the trial court in this case did indicate at the sentencing hearing that it considered a PSI report. We ordered the record supplemented with a copy of that report, which is properly part of the record on appeal in this case. See State v. Martin, 140 Ohio App.3d 326,338, 2000-Ohio-1942 ("Although the PSI report is not part of the public record, it is part of the appellate record for our review.").
 {¶ 24} Like Rickett's PSI report, Williams's PSI report contains information regarding his age, education, physical and mental health, and employment history. Similar to Rickett's report, Williams's report shows that he had trouble maintaining employment, partly due to incarcerations, and that his wife has been supporting their four children. Williams's report does not indicate that he suffered from substance abuse problems as Rickett did. Like Rickett, Williams did not challenge the information contained in the PSI report at the trial level. *Page 9 
 {¶ 25} Furthermore, as the trial court in Rickett, the trial court in this case was aware of Williams's financial situation when it imposed the monetary sanction. For his trial, the court appointed Williams counsel based on his indigent status. Furthermore, at the conclusion of the sentencing hearing, the trial court noted that Williams wished to appeal and that the court would appoint counsel for him. As inRickett, the fact that the trial court found Williams to be indigent for purposes of both trial and appeal does not necessarily mean that the court failed to consider his present and future ability to pay. Williams was 30 years old at the time of sentencing, and if he serves his full seven-year sentence, he will leave prison at age 37. Given his age and the information provided in the PSI report, and in the absence of an affidavit of indigency, the trial court could reasonably conclude that Williams would have the ability to pay the financial sanction in the future. Therefore, we cannot conclude that Williams's current financial position necessarily means that the trial court did not consider his present and future ability to pay within the meaning of R.C. 2929.19(B)(6).
 {¶ 26} For all these reasons, we conclude that the trial court sufficiently considered Williams's present and future ability to pay the fine, based on the record before it. Therefore, we overrule his third assignment of error.
 {¶ 27} In his second and fourth assignments of error, Williams contends that his trial counsel rendered ineffective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, an appellant must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense so as to deprive him of a fair trial. Strickland v. Washington (1984),466 U.S. 668, 687; State v. Drummond, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 205;State v. Issa (2001), *Page 10 93 Ohio St.3d 49, 67, 2001-Ohio-1290.
 {¶ 28} In order to establish deficient performance, an appellant must show that trial counsel's performance fell below an objective level of reasonable representation. State v. Conway, 109 Ohio St.3d 412,2006-Ohio-2815, ¶ 95. To establish prejudice, an appellant must show a reasonable probability exists that, but for the alleged errors, the result of the proceeding would have been different. Id.; State v.White (1998), 82 Ohio St.3d 16, 23, 1998-Ohio-363; State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph three of the syllabus. The appellant has the burden of proof on the issue of counsel's ineffectiveness because a properly licensed attorney is presumed competent. State v. Gondor, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62;State v. Lott (1990), 51 Ohio St.3d 160, 174-175.
 {¶ 29} In his second assignment of error, Williams argues that his trial counsel was ineffective for not objecting at trial to the State's use of his recorded interview with police in which he admitted to drug trafficking on multiple occasions. We have concluded, however, that the trial court did not commit plain error in admitting the recording, given the overwhelming evidence of Williams's guilt. Likewise, we conclude that no reasonable probability exists that, but for trial counsel's failure to properly object to the recording, the outcome of the trial would have been different. Therefore, we overrule Williams's second assignment of error.
 {¶ 30} In his fourth assignment of error, Williams contends that trial counsel rendered ineffective assistance of counsel by failing to file an affidavit of indigency on his behalf prior to sentencing. "[T]he failure to file an affidavit of indigency prior to sentencing may constitute ineffective assistance of counsel in a case where the record establishes a reasonable probability that the defendant would be found indigent thereby avoiding the *Page 11 
obligation to pay a mandatory fine." State v. Banks, Lucas App. Nos. WD-06-094, WD-06-095, 2007-Ohio-5311, ¶ 16, citing State v. Gilmer, Ottowa App. No. OT-01-015, 2002-Ohio-2045. The State concedes that had counsel filed an affidavit of indigency, a reasonable probability exists that the trial court would have found Williams indigent and would not have imposed the $10,000 fine. Therefore, we sustain Williams's fourth assignment of error. We remand this matter to the trial court so that Williams may file an affidavit of indigency as to the imposition of the mandatory fine, and the trial court may determine whether he is an indigent person and is unable to pay the fine.
 {¶ 31} In conclusion, we overrule Williams's first, second, and third assignments of error, but we sustain his fourth assignment of error. Accordingly, we affirm in part and reverse in part the judgment of the Lawrence County Court of Common Pleas, and, for the reasons noted above, we remand this matter to the trial court for further proceedings consistent with this opinion and applicable law.
 JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND THE CAUSE REMANDED. *Page 12 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED. Appellant and Appellee shall split the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Kline, P.J. Abele, J.: Concur in Judgment and Opinion. *Page 1