[Cite as *State v. Bulstrom*, 2013-Ohio-3582.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 12CA19 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| JERRED BULSTROM, | : | |
| | : | **RELEASED 08/14/13** |
| | : | |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

Timothy Young, State Public Defender, and Stephen A. Goldmeier, Assistant State Public Defender, Columbus, Ohio, for appellant.

Keller J. Blackburn, Athens County Prosecutor, and Merry M. Saunders, Athens County Assistant Prosecutor, Athens, Ohio, for appellee.
_____
Harsha, J.

{¶1}    After pleading guilty to receiving stolen property, grand theft, and breaking and entering, Jerred Bulstrom appeals the restitution portion of his sentence. First, he contends the court failed to consider his present and future ability to pay this sanction. However, before the court imposed the sanction, it stated that it had reviewed the record. And because the record contains a presentence investigation report with pertinent financial information about Bulstrom's ability to pay, we reject this argument.

{¶2}    Next, Bulstrom claims the record does not contain competent, credible evidence to support the amount of the restitution order imposed for stolen drag racing parts. However, the record contains a restitution report that supports the amount of the award. The trial court was free to rely on this evidence and reject Bulstrom's contention that the victim should only receive the scrap value of the parts. Therefore, we reject this

argument and affirm the trial court's judgment.

## I.  Facts

{¶3}    The Athens County grand jury indicted Bulstrom on one count each of receiving stolen property, grand theft, and breaking and entering.  He pleaded guilty to the charges, and the court ordered a presentence investigation report.  At the first sentencing hearing, the victim, Thomas Fetherolf testified about the drag racing parts Bulstrom took from him.  He testified that at the very least four engines or blocks were missing from the garage where he stored parts.  Some of the blocks had added value because he paid to have them converted into race motors.  Fetherolf claimed this added value would not be obvious "unless you knew what you were looking for."

{¶4}    The court continued the matter in part to give Fetherolf an opportunity to produce an itemization of stolen parts and their value.  Fetherolf told the court he could contact Sherman Gerlach[1] in Letart, West Virginia because Gerlach used to do machine work for him.  Fetherolf said he would ask Gerlach to "write me an estimate to build me a motor the way my motor was built before.  At least one of my motors.  One motor."

{¶5}    After an additional sentencing hearing, the court issued an entry on June 5, 2012, stating in part that "[r]estitution shall be ordered to Tom Fetherolf in amount yet to be determined."  Although Fetherolf was not present at the subsequent restitution hearing on June 25, 2012, the State told the court he wanted $576.00 in lost wages from previously coming to court.  The State also submitted a "Restitution Report" from Stacy Crook, a Victim Advocate.  The report contains two communications sent to Crook, one of which is a four-page fax.  Three of the four pages have "GERLACHS

---

[1] In the hearing transcript, this name is spelled "Gerlock."  However, it appears to be misspelled as the restitution report we discuss below contains an estimate from "Gerlachs" Garage.

GARAGE," an address in Letart, West Virginia, and a phone number printed at the top. The first of these pages is titled "Engine Parts List." It contains a list of quantities, part numbers, part descriptions, and dollar amounts. The second "GERLACHS GARAGE" page is a continuance of this list. The third "GERLACHS GARAGE" page is titled "Cyl Block – Cyl Heads & machine shop work." It contains a list of quantities, part numbers, what appears to be a description of machine shop work performed, and dollar amounts. The total cost of the listed parts and machine work is $9,663.20.

{¶6} The court asked defense counsel if he objected to the court considering the restitution report as evidence. Counsel responded, "As to what they've claimed are missing [sic], I think it would be evidence of that." The court responded, "Okay if you're okay with that. I mean it hasn't come in through a witness or anything like that but this is uh, a restitution type of thing." The court later said, "[I]f there is no objection I'll admit [the restitution report] into evidence as State's exhibit 1." The court again asked defense counsel if he was "okay with that?" Counsel responded, "No objection as to that's what they are claiming is missing your honor."

{¶7} In its presentation, the defense called Donnie Osborne, an employee at McKee Auto Parts in New Marshfield, Ohio as a witness. Osborne testified that Bulstrom sold motor parts to McKee for $368.50, and the defense introduced into evidence receipts from McKee for that amount. Bulstrom got paid by the pound for the parts. Osborne testified that the parts looked like junk to him.

{¶8} Subsequently, the court issued an entry that states in part:

> At a February 27 hearing, Fetheroff [sic] described the drag racing equipment which the Defendant had stolen. * * * He testified that engine blocks, heads, pistons and numerous items associated with drag racing were stolen. Fetheroff [sic] explained that these items were machined

which added value to them.

Fetheroff [sic] testified that a person who is not knowledgeable about machined drag racing equipment may not recognize the value of these items. He stated that people who operate junk yards pay based on the weight and not the quality of the items which they purchase. Following the hearing, Fetheroff [sic] provided the State with a list and value of the stolen items in the sum of $9,663.00. (State Exh. 1).

* * *

* * * Fetheroff's [sic] testimony was credible. He documented the value of the items stolen. Also, he is entitled to reimbursement in the sum of $576.00 as his expenses associated with his court appearance.

{¶9}    The court ordered Bulstrom to pay $10,239.20 in restitution to Tom Fetherolf ($9,663.20 for parts and machine work + $576.00 for lost wages) within 12 months. This appeal followed.

## II. Assignments of Error

{¶10}  Bulstrom assigns the following errors for our review:

1.  The trial court erred when it imposed an amount of restitution without competent, credible evidence of the amount of restitution owed. (June 28, 2012 Restitution Entry.)

2.  The trial court abused its discretion in imposing restitution without making a determination of Mr. Bulstrom's ability to pay. (June 28, 2012 Restitution Entry.)

## III. Restitution

{¶11}  In both of his assigned errors, Bulstrom challenges the restitution portion of his sentence. In *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, the Supreme Court of Ohio announced the standard for appellate review of felony sentences. Generally, we employ a two-step analysis. First, we "must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law."

*Kalish* at ¶ 4.  If the sentence is not clearly and convincingly contrary to law, we review the trial court's sentence for an abuse of discretion.  *Id.*  The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable.  *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶12}  Here, Bulstrom does not argue that the court's restitution award is clearly and convincingly contrary to law.  Instead, he argues that the court abused its discretion in various ways when it imposed the order.

### A.  Offender's Ability to Pay

{¶13}  For ease of analysis we address Bulstrom's assignments of error out of order.  In his second assignment of error Bulstrom contends the court erred when it ordered him to pay restitution without making a determination of his ability to pay.  Bulstrom suggests his inability to pay is demonstrated by the fact that the court found him indigent and appointed counsel for him.

{¶14}  As a financial sanction, R.C. 2929.18(A)(1) allows the trial court to order a felony offender to make restitution to the victim of the offender's crime in an amount based on the victim's economic loss.  Before imposing a financial sanction under R.C. 2929.18, the court "shall consider the offender's present and future ability to pay the amount of the sanction * * *."  R.C. 2929.19(B)(5).  " '[W]hen a trial court has imposed a financial sanction without even a cursory inquiry into the offender's present and future means to pay the amount imposed, the failure to make the requisite inquiry is an abuse of discretion.' "  *State v. Rizer*, 4th Dist. No. 10CA3, 2011-Ohio-5702, ¶ 49,[2] quoting *State v. Rickett*, 4th Dist. No. 07CA846, 2008-Ohio-1637, ¶ 4.

---

[2] In *Rizer*, we analyzed former R.C. 2929.19(B)(6).  Because the language of that provision now appears verbatim in R.C. 2929.19(B)(5), we find the principles in *Rizer* regarding restitution apply equally to the current version of R.C. 2929.19(B)(5).

**{¶15}** Our analysis is sometimes made more difficult because " '[a]lthough preferable for appellate review, a trial court need not explicitly state in its judgment entry that it considered a defendant's ability to pay a financial sanction. Rather, courts look to the totality of the record to see if this requirement has been satisfied.' " *Rizer* at ¶ 49, quoting *State v. Smith*, 4th Dist. No. 06CA2893, 2007-Ohio-1884, ¶ 42. "If the record shows that the court considered a presentence investigation report that provides pertinent information about the offender's financial situation and his ability to pay the financial sanction, it has met its obligation under R.C. 2929.19(B)(5)." *State v. Petrie*, 4th Dist. No. 12CA4, 2013-Ohio-887, ¶ 5.

**{¶16}** Here, the trial court never explicitly stated that it considered Bulstrom's present and future ability to pay restitution. Nor did the court explicitly state that it considered a presentence investigation report ("PSI") when it imposed restitution. However, in one sentencing entry the court stated that it "considered the record" when it sentenced Bulstrom and stated that "[r]estitution shall be ordered to Tom Fetherolf in amount yet to be determined." In a subsequent entry, the court set the amount of restitution.

**{¶17}** The "record" includes a PSI that contains information about Bulstrom's age, education, military service, physical and mental health, and employment history. Furthermore, the PSI describes his "financial condition," detailing his income and expenses. Because the PSI contains pertinent information about Bulstrom's financial situation, the totality of the record supports the conclusion that the trial court sufficiently considered Bulstrom's present and future ability to pay restitution. And contrary to what Bulstrom suggests, the fact that the court found him indigent and appointed counsel for

him did not preclude the court from finding he had the ability to pay the sanction in the future.  *See State v. Williams*, 4th Dist. No. 08CA3, 2009-Ohio-657, ¶ 25.  Accordingly, we overrule the second assignment of error.

### B.  Amount of Restitution

**{¶18}**  In his first assignment of error, Bulstrom claims the record does not contain competent, credible evidence to support the amount of the restitution order. Although he phrases the assignment of error broadly, his argument is narrower, i.e., Bulstrom only challenges the amount of the restitution order for the stolen parts.  He does not specifically challenge the amount of the order for the victim's lost wages. Therefore, we do not consider that issue.  *See* App.R. 16(A)(7).

**{¶19}**  R.C. 2929.18(A)(1) provides that:  "If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." " 'A trial court abuses its discretion when it orders restitution in an amount that has not been determined to bear a reasonable relationship to the actual loss suffered as a result of the defendant's offense.' "  *Rizer*, 4th Dist. No. 10CA3, 2011-Ohio-5702, at ¶ 53, quoting *State v. Johnson*, 4th Dist. No. 03CA11, 2004-Ohio-2236, ¶ 11.

**{¶20}**  We recognize that both *Rizer* and *Johnson* contain broader language that might be interpreted to require courts to apply the rules of evidence to restitution hearings.  See *Rizer* at ¶ 53 and *Johnson* at ¶ 10.  However, Evid.R. 101(C)(3) makes it

clear that it excludes the rules of evidence from sentencing proceedings. Thus, due process, rather than strict application of the rules of evidence, controls what proofs the court can consider in determining restitution.

{¶21} Bulstrom complains that the only evidence of Fetherolf's losses "came from [Fetherolf's] testimony and the self-serving documentation that he submitted to the State." (Appellant's Br. 4). Bulstrom claims Fetherolf "couldn't say for sure what parts were missing or taken." (Appellant's Br. 4). He argues that Fetherolf testified the stolen parts added up to " 'at least' four engines" but could not "specifically identify which parts of those engines were taken, as the engines were disassembled." (Appellant's Br. 4-5). In addition, Bulstrom complains that Fetherolf did not submit receipts for the parts or labor invested into those parts. Bulstrom argues that Fetherolf had an incentive to inflate his losses, and Fetherolf cannot be deemed credible without this type of documentation. And Bulstrom suggests that the parts could not be as valuable as Fetherolf claimed because Fetherolf did not bother to insure them.

{¶22} In addition, Bulstrom complains that the portion of the restitution report that lists values for parts and labor does not "bear any signatures or certifications" and is not "a receipt, an inventory, or an invoice[.]" (Appellant's Br. 5). He contends that Fetherolf "described [the list] merely as a recreation of what engines like the ones he asserts were taken would cost to build." (Appellant's Br. 5). Bulstrom describes the list as "nothing more than Mr. Fetherolf's uncorroborated assertions as to the contents of his garage and a projection of what it would cost to recreate the four engines he was attempting to build." (Appellant's Br. 5).

{¶23} In addition, Bulstrom claims that he presented credible, objective evidence

through Osborne's testimony that shows the "true value" of the stolen parts was only $368.50. (Appellant's Br. 5). Bulstrom describes Osborne as a "professional that deals with scrapped auto parts" and highlights Osborne's testimony that the parts looked like junk to him. (Appellant's Br. 5). Bulstrom points to the receipts from McKee as additional proof of the parts' low value.

{¶24} Initially, we reject Bulstrom's suggestion that the court had to accept Osborne's testimony on the value of the stolen parts because he is "objective" and a "professional." The court was free to believe the victim's testimony that the parts had value beyond their weight. And the court was free to conclude Osborne lacked the knowledge to identify the value in machined drag racing equipment. *See Harrington v. Harrington*, 4th Dist. No. 08CA6, 2008-Ohio-6888, ¶ 11, quoting *In re A.E.*, 2d Dist. No. 2006 CA 153, 2008-Ohio-1864, ¶ 15 (" 'The factfinder may accept or reject all, part, or none of the testimony of each witness.' ").

{¶25} We also disagree with Bulstrom's contention that the victim testified he could not say for sure what parts were taken. Fetherolf testified that he had been racing since 1990 so he had "shelves upon shelves of parts." Fetherolf suggested that many things may have been taken, but he was "just going by * * * what I can remember * * * was actually taken." And Fetherolf never stated he could not "specifically identify which parts of [the] engines were taken, as the engines were disassembled." Instead, he testified that at least four *complete* motors were taken but simply alerted the court to the fact that some of the engines were disassembled at the time Bulstrom took them and "just needed put back together basically."

{¶26} As to Bulstrom's remaining arguments, R.C. 2929.18(A)(1) does not

provide that a theft victim can only prove his losses through receipts for the stolen items.  In fact, the statute specifically provides that the court may base the amount of restitution on "estimates" and "other information" for replacing property.  That is exactly what the victim provided in this case.  He told the court he would contact his mechanic and have him prepare an estimate on the cost to replace at least one of the stolen motors.  The State introduced into evidence a restitution report that contains a detailed estimate for $9,663.20 from Gerlachs Garage.  Defense counsel never complained that the estimate lacked "signatures or certifications."  In fact, counsel made no objection to the restitution report and agreed that:  "As to what they've claimed are missing [sic], I think it would be evidence of that."  If in fact counsel wished to preserve an objection concerning valuation, he should have expressly done so.  In light of the fact that he did not, we fail to see why the court could not rely on the estimate in the report to set the amount of the restitution award for stolen parts at $9,663.20.

**{¶27}** The fact that Fetherolf had an incentive to inflate his losses to receive a higher amount of restitution does not make him so incredible that the court had to disregard his testimony and documentary evidence.  And the court did not have to disregard the estimate Fetherolf provided simply because he did not insure his parts. The fact that someone does not insure his property does not prove it is worthless.

**{¶28}** Because the record contains credible evidence to support the restitution award for the stolen parts, we overrule the first assignment of error.[3]  And having overruled both assignments of error, we affirm the judgment below.

JUDGMENT AFFIRMED.

---

[3] In doing so, we note the appellant has not raised any issue concerning the interplay between the admission of hearsay evidence and the right of confrontation.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J. & Hoover, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
      William H. Harsha, Judge


### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**