[Cite as *State v. Welch*, 2017-Ohio-7887.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 105158

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## GISELE WELCH

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-605237-A

**BEFORE:** Jones, J., Laster Mays, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** September 28, 2017

**ATTORNEYS FOR APPELLANT**

Joseph C. Patituce
Carli R. Citraro
Catherine Meehan
Patituce & Associates
26777 Lorain Road, Suite 1
North Olmsted, Ohio 44070


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Hannah Smith
        Christopher D. Schroeder
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant Gisele Welch ("Welch") challenges the trial court's decision to order her to pay restitution in the amount of $20,482. For the reasons that follow, we affirm.

{¶2} In April 2016, Welch was charged with one count of grand theft, a fourth-degree felony, and four counts of tampering with records, third-degree felonies. The charges stemmed from Welch's role as payee of social security benefits she received for the benefit of her developmentally disabled minor niece, Y.W. The indictment alleged that the value of the stolen property or services was more than $5,000 and less than $100,000.

{¶3} In June 2016, she pleaded guilty to one charge — Count 1, grand theft, amended from a fourth-degree felony to a fifth-degree felony. On the date scheduled for sentencing, however, the plea was vacated, and the matter was set for trial.

{¶4} In October 2016, Welch again pleaded guilty to an amended Count 1, a fifth-degree grand theft charge. The assistant prosecuting attorney stated at the hearing that the state was going to be seeking $21,682 in restitution from Welch, "just like we were doing * * * before." Both defense counsel and Welch indicated that that was their understanding of the plea agreement. At the conclusion of the plea hearing, the assistant prosecuting stated the following:

> Your Honor, just so the record is clear, Count 1 is a felony of the 4th degree, grand theft. We were amending it down to — just so it can be a felony of the 5th degree, by lowering the value being $1,000 to $7,500, just

so the record is clear even though we are seeking the actual amount of $21,682.

**{¶5}** The trial court then asked defense counsel if he "approved" the amendment knowing that the state was "seeking the greater amount," to which counsel responded "yes."

**{¶6}** At the sentencing hearing, the assistant prosecuting attorney stated that the restitution amount the state was seeking had been slightly lowered to $20,482. Defense counsel stated that he and Welch disputed the restitution amount and contended that issue in the case was more about the social security funds being commingled by Welch, rather than stolen. He contended that the accurate amount of the theft that occurred was "closer to $4,700." The court held a hearing on the issue of restitution, and at the conclusion of the hearing, ordered Welch to pay restitution to the Social Security Administration in the amount of $20,482. The more detailed facts of the case, which were elicited at the restitution hearing, are as follows.

**{¶7}** As mentioned, Y.W. is developmentally delayed and was a minor at all relevant times. Her mother, D.W., is also developmentally delayed, and as a result of their circumstances, they were receiving services from the Welcome House, a social services agency, to help with day-to-day activities. One of the workers from the Welcome House believed that the daughter and mother were eligible for social security benefits, so the worker inquired about it with the Social Security Administration. The worker learned that Welch had been receiving benefits on behalf of Y.W., who is her niece, for approximately five years. The Welcome House worker referred the matter to

Jeff Starr ("Starr"), an investigator with the Board of Developmental Disabilities, who began an investigation.

{¶8} Starr testified that he spoke with D.W. numerous times during his investigation, and learned that during the approximate five-year period that Welch had been receiving funds on Y.W.'s behalf, Welch had given D.W. and Y.W. a flat screen television and had taken them out to eat two or three times a year. Starr concluded that Welch had misappropriated the Social Security funds.

{¶9} D.W., Y.W.'s mother, also testified. According to D.W., she and Y.W. would see Welch once or twice a year. Other than bringing them Christmas gifts, taking them out to eat once or twice, paying for Y.W. to get her hair braided a couple of times, and once buying back-to-school clothes for Y.W., Welch did not support or give money to D.W. for Y.W.'s care. D.W. admitted that Welch's sister, another of Y.W.'s aunts, brought gifts for Y.W. and took her clothes shopping from time to time. D.W. testified that, until the investigation began in this case, she was unaware that Welch was receiving money from the Social Security Administration for Y.W.'s care.

{¶10} An investigator from the Social Security Administration, Laura DeGiglio ("DeGiglio"), testified that Welch received a total of $33,252 from the administration on Y.W.'s behalf. As part of her investigation, DeGiglio visited D.W. and Y.W. at their residence on two occasions to talk to them and look around at what possessions they had. DeGiglio also interviewed Welch and reviewed receipts that Welch provided to her as proof of purchases made on Y.W.'s behalf, as well as the "representative payee reports" that Welch submitted to the Social Security Administration detailing the money she

allegedly spent on Y.W.

{¶11} In regard to the receipts Welch provided, DeGiglio tested that, based on her visits to the home, she did not find them to be a credible representation of merchandise Welch purchased on behalf of Y.W. In regard to the representative payee reports, the amount Welch claimed she had spent on Y.W. always ended with an even amount and, based on her investigation in this case, she found that "odd."[1]

{¶12} Based on her investigation, DeGiglio concluded that Welch should be credited with approximately $1,200 for items she purchased for, and gave to, Y.W. DeGiglio further testified that after Welch learned of the investigation, she voluntarily returned approximately $11,000 to the Social Security Administration. After crediting Welch for the approximate $1,200 she believed she did spend on Y.W., and the approximate $11,000 Welch returned to the administration, DeGiglio concluded that Welch misappropriated $20,482 from the Social Security Administration.

{¶13} Welch presented the testimony of David Zuber ("Zuber"), a certified public accountant who conducted an accounting of the funds disbursed to Welch on behalf of Y.W. Zuber testified that, relevant to this case, Welch had two banking accounts: one was a "Key for Kids" account at Key Bank, and the other was an account at a credit union.

{¶14} Zuber found that all of the disbursements Welch received from the Social Security administration were deposited in the Key for Kids account, and then withdrawn.

---

[1] DeGiglio admitted that sometimes payees' "even out" their figures so as to give a general accounting of the funds they have spent, but based on her visits with D.W. and her review of the

Some of the withdrawn money was then deposited in the credit union account.

{¶15} Zuber testified that he attempted to reconcile the disbursements with the documentation provided about purchases for Y.W.; he found a deficit, totaling $4,755. Some of the receipts had Welch's sister's name on them, so Zuber interviewed the sister, and learned that she would spend money on behalf of Y.W. and then seek reimbursement from Welch. Zuber admitted that he had no knowledge of whether the purchased items reflected on the receipts were actually given to, or used for the benefit of, Y.W.

{¶16} On this testimony, the trial court found that the social security benefits were "clearly mishandled." The court further found that the receipts Welch presented "actually prove nothing, just that [Welch] bought some things, not that anything was actually given to the child. It could [have been] for the benefit of any person."

{¶17} Welch now appeals and sets forth the following assignments of error:

I. The trial court improperly ordered restitution in excess of the victim's economic loss.

II. The trial court improperly ordered restitution in an amount not supported by legally sufficient evidence.

III. The trial court improperly ordered restitution in an amount beyond the maximum property value indicated by the theft subsection of which appellant was convicted.

IV. The cumulative error materially prejudiced appellant.

{¶18} The assignments of error are interrelated and therefore will be addressed together.

{¶19} Generally, a decision to award restitution lies within the sound discretion of

---

receipts presented by Welch, she found the "evened out" accounting here "odd."

the trial court and will not be reversed on appeal absent an abuse of discretion. *In re M.A.*, 2016-Ohio-1161, 61 N.E.3d 630, ¶ 12 (11th Dist.). "There must be competent and credible evidence in the record from which the court may ascertain the amount of restitution to a reasonable degree of certainty." *State v. Seele*, 6th Dist. Sandusky No. S-13-025, 2014-Ohio-1455, ¶ 9. A trial court abuses its discretion by ordering restitution in an amount that does not bear a reasonable relationship to the actual loss suffered. *State v. Portentoso*, 173 Ohio App.3d 297, 2007-Ohio-5490, 878 N.E.2d 76, ¶ 8 (3d Dist.); *State v. Bulstrom*, 2013-Ohio-3582, 997 N.E.2d 162, ¶ 19 (4th Dist.).

**{¶20}** In her first two assignments of error, Welch contends that because the trial court did not give her credit for any of the spending evidenced by the receipts she presented other than the $1,200 DeGiglio credited to her, it "improperly exceeded the victim's actual economic loss." In doing so, Welch argues that the trial court gave too much weight to the testimony of the mother and the two investigators. We disagree.

**{¶21}** Under R.C. 2929.18, a victim has the right to restitution for economic loss suffered as a direct and proximate result of the commission of the offense. It is true, however, that the restitution ordered must be based on the victim's economic loss, and may not exceed the amount of the actual economic loss. R.C. 2929.81(A)(1).

**{¶22}** After hearing the testimony and reviewing the evidence, the trial court found that the receipts did not prove that any of the purchased merchandise reflected on them went for the benefit of Y.W. Thus, the court rejected Zuber's testimony that all but $4,755 of the disbursed funds were accounted for. In determining restitution, a trial court "'is free to accept or reject all, part, or none of the testimony of each witness.'"

*State v. Bulstrom*, 997 N.E.2d 162, 2013-Ohio-3582, ¶ 24 (4th Dist.), quoting *In re A.E.*, 2d Dist. Greene No. 2006-CA153, 2008-Ohio-1864, ¶ 15. Moreover, a trial court is under no duty to itemize or otherwise explain how it arrived at the amount of restitution it orders, so long as the trial court can discern the amount of restitution to a reasonable degree of certainty from competent, credible evidence in the record. *State v. Perkins*, 3d Dist. Marion No. 9-13-52, 2014-Ohio-2242, ¶ 23; *State v. Didion*, 173 Ohio App.3d 130, 2007-Ohio-4494, 877 N.E.2d 725, ¶ 20 (3d Dist.)

{¶23} Upon review, we find no abuse of discretion and that the trial court's order of restitution was supported by competent, credible evidence in the record. The two investigators in this case, Starr and DeGiglio, interviewed D.W. and visited her home where she resided with Y.W. They provided competent, credible testimony about the conclusions they reached as a result of their investigations.

{¶24} On the other hand, the trial court did not find Welch's receipts credible — as it was free to do — and there is nothing incredible about that. Some of the receipts, for example, were for purchases made by Welch's sister, a person who was not charged as a payee for the funds. Taken along with other evidence in the record, such as the fact that D.W. was completely unaware that Welch was even receiving the money for the benefit of Y.W., the trial court did not abuse its discretion in determining the actual loss suffered and competent, credible evidence supported its determination. The first and second assignments of error are overruled.

{¶25} In her third assignment of error, Welch contends that the trial court improperly ordered restitution in an amount beyond the maximum value indicated under

the theft subsection to which she pleaded. Specifically, under the subsection of theft to which she pleaded, the value of property or services was $1,000 or more, but less than $7,500. *See* R.C. 2913.02(A)(3) and (B)(2).

**{¶26}** This court addressed this issue in *State v. Lalain*, 8th Dist. Cuyahoga No. 95857, 2011-Ohio-4813. In *Lalain*, the defendant pleaded guilty to a fifth-degree theft charge, which stated that the value of the property or services stolen was $500 or more, but less than $5,000. The charges resulted from the defendant's theft of items from his former employer; the items were recovered by the police and returned to the employer. The trial court ordered the defendant to pay $63,121 in restitution to the defendant's former employer. The amount consisted of $55,456 for the "time spent by [the company's] employees in support of [the] case" and $7,665 that the company spent for accounting services to determine their loss.

**{¶27}** On appeal to this court, the defendant challenged the restitution order, contending among other things, that the trial court erred by ordering restitution in an amount greater than $4,999.99 because he was only convicted of a fifth-degree felony. This court disagreed, stating that "'[b]y agreeing to the restitution award in exchange for pleading guilty, he received the benefit of his bargain: a reduced charge.'" *Id.* at ¶ 17, quoting *State v. Stewart*, 3d Dist. Wyandot No. 16-08-11, 2008-Ohio-5823, ¶ 13.

**{¶28}** The Ohio Supreme Court reversed the *Lalain* decision, finding the expenditures constituting the restitution amount were "not the direct and proximate result of the commission of the theft offense, rather, they are consequential costs incurred subsequent to the theft to value the property that had been taken." *State v. Lalain*, 136

Ohio St.3d 248, 2013-Ohio-3093, 994 N.E.2d 423, ¶ 25.   But the court further stated the following:

> In addition, we recognize that the amount of restitution is not correlated to the degree of the offense.   For example, R.C. 2913.02(B)(5) states, "if the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle, a felony of the fourth degree," regardless of the value of the motor vehicle.   A trial court choosing to order restitution in a case of grand theft of a motor vehicle is not restricted to the value corresponding to a fourth-degree felony and may instead award restitution pursuant to R.C. 2929.18(A)(1).

*Id.* at ¶ 24.

{¶29} Further, it has been held that restitution for damages relating to dismissed charges where the restitution is part of a defendant's negotiated agreement is permissible. *State v. Strickland*, 10th Dist. Franklin No. 08AP-164, 2008-Ohio-5968, ¶ 12.   Thus, a trial court may order a defendant to pay restitution relating to dismissed counts when:

> (1) the defendant entered into a plea agreement in which he or she agreed to plead guilty to some counts contained in the indictment in exchange for the dismissal of other counts in the indictment, and (2) the defendant agreed, as part of the consideration for the plea agreement, to provide restitution to the victims for the damages caused by his or her conduct for which criminal charges were dropped under the plea agreement.

*Id.*

{¶30} Here, the general restitution amount that the state sought was stated at both plea hearings and Welch stated that she understood and agreed to that approximate amount.   On this record, we find that the trial court did not abuse its discretion in ordering Welch to pay $20,482 in restitution.   The third assignment of error is therefore overruled.

{¶31} In her final assignment of error, Welch contends that cumulative error

existed because the state's witnesses lacked competence and credibility.

{¶32} In *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), the Ohio Supreme Court recognized the doctrine of cumulative error. *Id.* at paragraph two of the syllabus. Under this doctrine, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal. *Id.* at 196-197; *see also State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 258.

{¶33} The court has recognized that multiple errors, when aggregated, may violate a defendant's right to a fair trial, even when those errors are determined to be harmless when separately considered. *State v. Madrigal*, 87 Ohio St.3d 378, 397, 721 N.E.2d 52 (2000). To find cumulative error, we first must find multiple errors committed at trial, and secondly, we must conclude that a reasonable probability exists that the outcome of the trial would have been different but for the combination of the harmless errors. *Id.* at 398.

{¶34} Upon review, as discussed above, there were not multiple errors committed here. Thus, the cumulative error doctrine is inapplicable. Further, the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. It is not incredible on this record that the trial court assigned more credibility to the state's witnesses over the defense witness.

{¶35} The fourth assignment of error is therefore overruled.

**{¶36}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., JUDGE

ANITA LASTER MAYS, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR