[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Azeen*, Slip Opinion No. 2021-Ohio-1735.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-1735

THE STATE OF OHIO, APPELLANT, *v*. AZEEN, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Azeen*, Slip Opinion No. 2021-Ohio-1735.]

*Criminal law—In the absence of a negotiated plea agreement showing an express or implied reservation by the state of the right to file additional charges and that a defendant had been induced into offering a guilty plea, the state may pursue additional charges when a victim of a crime later dies of the injuries sustained in the crime—State was entitled to file aggravated-murder charges when victim later died of injuries suffered years earlier—No plea agreement was entered on the record when defendant was initially charged with attempted murder—Inference of a plea agreement was not supported by facts in evidence.*

(No. 2020-0143—Submitted January 27, 2021—Decided May 25, 2021.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 108072, 2019-Ohio-4677.

_____

**DEWINE, J.**

{¶ 1} In 1987, Abdul Azeen pleaded no contest to attempted murder after shooting a young man in the neck on a playground basketball court. Some 27 years later, the victim died, allegedly as a result of injuries from the shooting. The state reindicted Azeen, this time charging him with aggravated murder. Azeen claims that his earlier plea prevents the state from prosecuting him again. We must decide whether the murder case may go forward.

{¶ 2} In arguing that further prosecution is barred, Azeen relies on a prior decision of this court, *State v. Carpenter*, 68 Ohio St.3d 59, 623 N.E.2d 66 (1993). There, we applied principles of contract law to hold that when a court "has accepted a *negotiated* guilty plea to a lesser offense and the victim later dies of injuries sustained in the crime" (emphasis added), the state is precluded from prosecuting the defendant for murder "unless the state expressly reserves the right to file additional charges on the record at the time of the defendant's plea." *Id*. at syllabus; *see State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, 806 N.E.2d 542, ¶ 11 ("The holding in *Carpenter* is essentially a synthesis of contract and criminal law in a particular factual setting").

{¶ 3} By its terms, *Carpenter* applies to negotiated pleas. Here, there is no evidence that Azeen's 1987 plea was the product of negotiations between the state and Azeen. As a consequence, the rule announced in *Carpenter* does not prevent the state from prosecuting Azeen on the new murder charge. We therefore reverse the contrary judgment of the court of appeals and remand this case to the trial court for further proceedings.

## I. The criminal proceedings related to the shooting

### A. The 1987 case

{¶ 4} In 1987, Azeen opened fire on a group of young men taking part in a playground basketball game. Azeen shot Danuell Jackson in the neck, leaving him paralyzed from the waist down. Azeen then took aim at Herman Jackson, Danuell's

brother, shooting him in his groin. Azeen ultimately pleaded no contest to all the counts in the indictment: the felonious assault of Herman and the attempted murder of Danuell, both with gun specifications, as well as a charge of having a weapon while under a disability.[1]

{¶ 5} The trial court opened the plea hearing by confirming that Azeen intended to enter a no-contest plea and advising him of the possible sentencing range for each of the offenses. Following that portion of the colloquy, the trial court judge informed Azeen of the sentence he intended to impose: "I have indicated to your attorney that you will expect, under the circumstances presented here, I'm going to sentence you to three years actual incarceration and on top of that I'm going to sentence you to five to twenty-five years."

{¶ 6} By this exchange, the trial court conveyed to Azeen that it would impose 3 years for the gun specifications followed by an indefinite term of 5 to 25 years. This 8-to-25-year term amounted to the minimum sentence available on the attempted-murder count. *See* former R.C. 2923.02(E), Am.H.B. No. 651, 140 Ohio Laws, Part II, 4345, 4348; former R.C. 2929.11(B)(1)(a), Am.H.B. No. 284, 141 Ohio Laws, Part II, 3101, 3102; former R.C. 2929.71, Am.S.B. No. 261, 140 Ohio Laws, Part I, 583, 601.

{¶ 7} The trial court then reviewed Azeen's constitutional rights and accepted his no-contest pleas. At that point, the prosecutor summarized the facts supporting the charges, and the victims addressed the court. The prosecutor informed the court that Danuell's condition "will probably not improve," explaining that "[i]f anything, it will deteriorate slowly." No one suggested that Danuell's injuries might be fatal, and the state did not address the possibility of bringing additional charges in the event that Danuell were to die from his injuries.

---

1. At the time, Azeen was known as Lloyd Harris and was prosecuted under that name. This opinion will refer to Azeen by his current name.

{¶ 8} The court pronounced Azeen guilty and proceeded directly to sentencing. The trial court imposed a prison term of 8 to 15 years for the felonious-assault charge with the attendant gun specification; a term of 8 to 25 years on the attempted-murder charge, also including the associated gun specification; and a definite sentence of one and a half years for having a weapon while under a disability. The prosecutor then engaged in the following exchange with the court:

[Prosecutor]: To be served how?

The court: To be served concurrently.

[Prosecutor]: The first two counts to be served concurrently,
or all three?

The court: All three served concurrently.

All in, the trial court sentenced Azeen to an aggregate prison term of 8 to 25 years. And by ordering Azeen's sentences to be served concurrently, the trial court imposed the minimum prison term authorized for his offenses.

B. The 2016 case

{¶ 9} Danuell died in 2014. The autopsy examiner opined that his death was caused by infections that had developed as a result of an ulcer in his pelvis and upper leg, which the examiner attributed to his paraplegia. The examiner therefore ruled the death a homicide, and in 2016, the state indicted Azeen for the aggravated murder of Danuell based on the 1987 shooting.

{¶ 10} Azeen filed a motion to dismiss the 2016 indictment on the grounds that it violated the terms of a negotiated plea agreement that Azeen claimed he had entered into with the state in 1987. His argument was premised on this court's decision in *Carpenter*. There, this court held, "the state cannot indict a defendant for murder after the court has accepted a negotiated guilty plea to a lesser offense and the victim later dies of injuries sustained in the crime, unless the state expressly

reserves the right to file additional charges on the record at the time of the defendant's plea." *Carpenter*, 68 Ohio St.3d at 62, 623 N.E.2d 66. Azeen contended that because the state had not reserved its right to bring additional charges at the time of his plea, the state was barred from prosecuting him for Danuell's death. The state countered that there had not been a negotiated plea, so *Carpenter* did not apply.

{¶ 11} During the hearing on the motion to dismiss, Azeen conceded that no explicit plea agreement appeared on the record. Nonetheless, Azeen maintained that the transcript of the 1987 plea hearing demonstrated that the parties had entered into a sentencing agreement prior to going on the record. Azeen argued that "there had to be some negotiation" between the parties because the trial court told Azeen what his sentence would be before he entered his no-contest pleas. Counsel for Azeen also touted the capabilities of the lawyer who had represented Azeen in 1987, saying that "there's no way [Azeen's former lawyer] walked into a courtroom without knowing his client was going to get the minimum and pled no contest."

{¶ 12} In response, the state pointed out that the trial court's statement about the sentence Azeen could expect demonstrated only that the judge had made a decision about the sentence he would impose; it did not show that that sentence was the product of an agreement. Because the record contained no evidence of a negotiated plea agreement between Azeen and the state, Azeen could not have reasonably believed that the state had—in exchange for Azeen's plea—agreed not to bring any additional charges related to the matter.

{¶ 13} The trial court granted Azeen's motion to dismiss, venturing that "all the elements of a contract are supported in the transcript" of the 1987 plea hearing. The trial court agreed that Azeen had been "assigned a zealous advocate" in the earlier case and that as a result, Azeen must have received "a significant benefit to induce him into entering a no contest plea." The court therefore surmised that Azeen's sentence was "a direct result of the discussions" that had taken place off

the record. And because the prosecutor had "remained silent when the Court outlined this benefit," the court reasoned that the state had "in effect acquiesced to the agreement."

{¶ 14} The Eighth District Court of Appeals affirmed the trial court's dismissal of the aggravated-murder charge. It reasoned, "Had there not been off-the-record negotiations and an agreement on the sentence, the trial judge would not have stated Azeen's sentence as the first course of business at the change-of-plea hearing."[2] 2019-Ohio-4677, 143 N.E.3d 162, ¶ 27. The court of appeals further relied on the fact that the trial court had proceeded directly to sentencing as proof that the sentence had already been negotiated. *Id.* And the court of appeals also found it significant that counsel for Azeen had "informed the court" at the hearing on the motion to dismiss that the attorney who had represented Azeen in the 1987 case was "a seasoned criminal defense attorney who fought hard for his clients." *Id*. at ¶ 26.

{¶ 15} The state presents two arguments in its appeal to this court. Its first proposition of law asserts that this court's decision in *Carpenter* does not apply retroactively to pleas entered before that case was decided. And in its second proposition of law, the state contends that irrespective of the retroactivity question, *Carpenter* does not apply to unnegotiated no-contest pleas like the one in this case.

---

2. It is worth noting that the Eighth District's account of the 1987 plea hearing contains some inaccuracies. The court of appeals described the trial court's sentencing advisement this way: "At the opening of the plea hearing, the trial court told Azeen 'when you plead no contest, you can expect to receive this sentence: Three years for the firearm specification, and then the 5 to 25 indeterminate for the attempted murder. The other offenses are concurrent.' " 2019-Ohio-4677, 143 N.E.2d 162, at ¶ 24. But that language appears nowhere in the transcript of the plea hearing; rather, the Eighth District is quoting defense counsel's summation during the hearing on the motion to dismiss. Nor was the trial court's statement regarding Azeen's sentence its "first course of business" at the opening of the plea hearing. *See id.* at ¶ 27. Instead, it appears on the tenth page of the plea transcript, after the trial court had fully advised Azeen of the potential sentencing ranges for his crimes.

## II. The *Carpenter* decision

{¶ 16} When a defendant has entered a plea to a nonhomicide offense and the victim later dies as a result of the conduct that gave rise to the offense, the state may bring charges for homicide without running afoul of the constitutional prohibitions against double jeopardy. *State v. Dye*, 127 Ohio St.3d 357, 2010-Ohio-5728, 939 N.E.2d 1217, ¶ 20, fn. 2. This is because the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution bar second prosecutions for the *same offense*. A defendant who has entered a plea to a lesser offense prior to the victim's death has not yet been placed in jeopardy for homicide; an essential element of any homicide offense—the death of the victim—has not yet occurred. *Dye* at ¶ 20, fn. 2, citing *Diaz v. United States*, 223 U.S. 442, 449, 32 S.Ct. 250, 56 L.Ed. 500 (1912) (only when the victim had died "was it possible to put the accused in jeopardy" for a homicide offense). Because "a fact necessary to the commission of [the homicide offense] occurs after the defendant has been convicted of another offense, multiple prosecutions are not barred by the Double Jeopardy Clause." *State v. Thomas*, 61 Ohio St.2d 254, 262, 400 N.E.2d 897 (1980), *overruled on other grounds*, *State v. Crago*, 53 Ohio St.3d 243, 559 N.E.2d 1353 (1990), *superseded by statute as stated in State v Anderson,* 138 Ohio St.3d 264, 2014-Ohio-542, 6 N.E.3d 23.

{¶ 17} Nevertheless, when a defendant has entered into a plea agreement with the state with respect to an offense and the victim later dies as a result of that offense, principles of contract law may be applied to prevent a prosecution for homicide. The idea is that a plea agreement sometimes may reflect a mutual understanding between the prosecutor and the defendant that the plea will finalize the entire prosecution related to a criminal incident. In such a situation, the defendant's plea is induced by the prosecutor's promise—either express or implied—not to further prosecute the defendant should the victim die.

**{¶ 18}** This court first considered the question whether a plea agreement barred a subsequent prosecution related to the same incident in *Carpenter*. In that case, the defendant and the state had negotiated a plea agreement under which the state would reduce the defendant's felonious-assault charge in exchange for a guilty plea. *Carpenter,* 68 Ohio St.3d at 61-62, 623 N.E.2d 66. At the time of the plea, the state was aware that the victim was in a coma and would "very probably die." *Id*. at 60. A little over a year later, that eventuality came to pass, and the state brought murder charges against the defendant.

**{¶ 19}** This court concluded that the plea agreement barred any further prosecution of the defendant for crimes stemming from the assault. We noted that the state had chosen to enter into a plea agreement with the defendant even though it had known that the victim's death was likely. *Id.* at 61. This court explained that under those circumstances, the defendant had reasonably expected that his plea would resolve the matter entirely and the prosecutor had been fully aware that that was the defendant's understanding. *Id*. at 62. We therefore reasoned that had the state wanted to retain the option of bringing additional charges in the event of the victim's death, it should have made that an explicit part of the agreement. *Id*.

**{¶ 20}** As we later explained, the concern in *Carpenter* had been "to avoid the breaking of promises made by the prosecutor in the original plea agreement." *Dye*, 127 Ohio St.3d 357, 2010-Ohio-5728, 939 N.E.2d 1217, at ¶ 22. Thus, " 'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled.' " *Id*., quoting *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). We noted that this principle formed the basis for the rule in *Carpenter* that "effect must be given to the intention of the state and the defendant in their plea bargain, and courts should enforce what they perceive to be the terms of the original plea agreement." *Dye* at ¶ 22. We therefore held, "In order for a guilty plea to be a 'negotiated guilty plea' within the meaning

of *State v. Carpenter*, the record must show the existence of the elements of a contract (the plea agreement)." *Id*. at ¶ 23.

{¶ 21} This court found evidence of such a contract in *Dye*. The defendant in that case had been charged with aggravated vehicular assault after he hit a 13-year-old boy with his truck. *Id*. at ¶ 3. The child later died from complications from injuries sustained in the accident, and the state charged the defendant with aggravated vehicular homicide. Though it was "a close question," this court ultimately determined that the original plea had been negotiated, based in part on the state's dismissal of charges and the prosecutor's statements on the record referring to an agreement between the parties. *Id*. at ¶ 24.

{¶ 22} This court then turned to the scope of the plea agreement. As in *Carpenter*, we emphasized that the record had contained testimony indicating that the child's death from the injuries was foreseeable. *Id*. at ¶ 26. The *Dye* court concluded, "On this record, the evidence of plea negotiations and the parties' awareness of the gravity of the victim's injuries, together with the state's failure to reserve the right to prosecute for any later homicide charge, justify the conclusion that the state *agreed* to forgo further prosecution * * *." (Emphasis added.) *Id*. at ¶ 25.

{¶ 23} The takeaway from these cases is that whether the state may bring additional charges against someone who has entered into a negotiated plea agreement depends on the scope of the agreement. In making that determination, we consider what matters both parties reasonably understood to be included in the agreement. *See Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, 806 N.E.2d 542 (holding that there could be no reasonable expectation that a plea to a misdemeanor charge of driving while under the influence, in violation of a city code, would bar a felony charge of aggravated vehicular assault that arose out of the same accident—a charge over which neither the municipal court nor the city prosecutor had authority).

### III. The record does not show the existence of a plea agreement in this case

{¶ 24} We begin by taking up the state's second proposition of law, which we find to be dispositive of this appeal. The state contends that for the rule in *Carpenter* to apply, the terms of a plea agreement must be placed on the record, and courts may not infer the existence of an agreement by speculating about the contents of an off-the-record conversation. The state maintains that the record does not show that a negotiated agreement existed between the parties. If there was no negotiated plea agreement between Azeen and the state in 1987, then the state is not barred on that ground from bringing additional charges.

{¶ 25} In this case, the parties did not put any plea agreement on the record. And as we will explain, the inferences drawn by the trial court in support of its determination that there had been an off-the-record agreement are not supported by the facts in evidence. We therefore conclude that the record fails to establish the existence of a plea agreement.

{¶ 26} The lower courts determined that Azeen's plea had been negotiated with the state based largely on the fact that an off-the-record conversation had taken place prior to the plea hearing. We agree that the record demonstrates that the court had spoken with the parties before the hearing: this is apparent from the judge informing Azeen, "*I have indicated to your attorney* that you will expect, under the circumstances presented here, I'm going to sentence you to three years actual incarceration and on top of that I'm going to sentence you to five to twenty-five years." (Emphasis added.) But this advisement shows only that *the judge* had told the parties what sentence he intended to impose; it does not support an inference that Azeen had entered into any agreement *with the state* regarding his sentence.

{¶ 27} It is not unusual in criminal cases for attorneys to approach the judge to get an idea of what sentence the judge is likely to impose if their client enters a plea to an offense. Some judges are upfront about what they are inclined to do, believing that candor about possible sentencing decisions promotes informed

decisionmaking.[3] *See, e.g., State v. Warner*, 762 So.2d 507, 514 (Fla.2000); *People v. Cobbs*, 443 Mich. 276, 284, 505 N.W.2d 208 (1993). In this case, the judge presiding over the 1987 plea hearing appropriately put that conversation on the record: he told Azeen, "I have indicated to your attorney" that "I'm going to sentence you" to what amounted to the minimum aggregate prison term for Azeen's offenses. But we cannot assume that the state and Azeen agreed to the sentence simply because the judge decided to impose it. That line of thinking wrongly implies that a trial court has no discretion to impose a sentence without the state's approval.

{¶ 28} The lower courts also speculated that there was an agreement based on the state's decision not to object to the sentence or to argue for a harsher sentence on the record. The trouble with that approach is that there are all kinds of other, equally plausible reasons why the state may have chosen to be silent at sentencing. Maybe the prosecutor made an argument in chambers against the sentence, but chose not to reargue it on the record because he considered it futile or because he did not want to upset the victims. It could be that the prosecutor did not argue for a different sentence on the record because he personally thought the sentence was appropriate, even if he had not been authorized to enter into any agreement on sentence. Perhaps the prosecutor simply thought it prudent to defer to the court on sentencing. Because the record contains no evidence regarding the reason for the prosecutor's decision not to argue for a harsher sentence, the prosecutor's lack of argument does not support the existence of a plea agreement.

---

3. We do not suggest that trial judges should "float a possible sentence as an inducement to obtain a defendant's plea." First dissenting opinion at ¶ 51. But it is not inherently coercive for a judge to provide "a clear statement of information" in response to a request by a party. *People v. Cobbs*, 443 Mich. 276, 284, 505 N.W.2d 208 (1993). "Coercion is avoided when a judge does not initiate a discussion of the sentence, and when a judge does not speculate on the sentencing consequences of future procedural contingencies." *Id.*

{¶ 29} Moreover, the state was not entirely silent on the matter. After the court imposed the sentences, the prosecutor asked, "To be served how?" And although the trial court responded that they were to be served concurrently, the prosecutor nevertheless pressed further, asking, "The first two counts to be served concurrently, or all three?" The court of appeals characterized this exchange in the following way: "the assistant prosecuting attorney asked the court to confirm that the sentences on the underlying offenses were to be served concurrently" and "[t]he trial court confirmed that was correct." 2019-Ohio-4677, 143 N.E.2d 162, at ¶ 25. But that's not what happened. Rather, the prosecutor posed an open-ended question regarding how the court was imposing the sentences. Far from indicating that the sentence imposed by the trial court was the product of an agreement between Azeen and the state, this exchange suggests the opposite. Indeed, under the law at the time, the sentences would have been treated as concurrent by default, unless the trial court ordered them to be served consecutively. *See* former R.C. 2929.41(A) and (B), Am.S.B. No. 210, 140 Ohio Laws, Part I, 583, 598-599. Had the prosecutor truly believed that the parties had agreed that the sentences would be imposed concurrently, he would not have needed to say anything at all.

{¶ 30} The court of appeals also took the fact that the trial court proceeded to sentencing without obtaining a presentence-investigation report as evidence that the sentence "had already been negotiated." 2019-Ohio-4677, 149 N.E.3d 162, at ¶ 27. This inference was incorrect. There may be any number of reasons that the prosecutor did not ask for a presentence investigation: perhaps the prosecutor wanted to save the victims another trip to the courthouse for a sentencing hearing or maybe he wanted to ensure that Azeen did not change his mind and move to withdraw his plea prior to sentencing. And it certainly would not have made sense for defense counsel to request one, given that the judge had already indicated he would give Azeen the minimum sentence.

{¶ 31} Equally misplaced was the lower courts' reliance on statements made by Azeen's current counsel during the hearing on the motion to dismiss that "there's no way" Azeen's former attorney would have permitted him to enter a plea without knowing the sentence. Counsel's statements at the hearing regarding his opinion of Azeen's 1987 attorney are not evidence, nor is it proper for a court to make factual assumptions about what happened in a case based merely on an attorney's reputation. But even assuming that the speculation is correct, it still falls short: if it is true that this particular defense attorney would not have advised his client to enter a no-contest plea without knowing what the sentence would be, that merely supports an inference that the defense attorney took efforts to find out what sentence the judge would impose. It does nothing to demonstrate that the state agreed to it.

{¶ 32} The second dissenting opinion looks beyond the arguments raised in the briefs and the evidence relied on by the trial court and finds its own evidence of a plea agreement. It says that "the transcript from the plea hearing shows that the prosecutor suggested that the trial court could delete a clause beginning with the word 'furthermore' " from an unidentified document and speculates "what could [that document] be other than the plea agreement?" Second dissenting opinion at ¶ 54.

{¶ 33} The plea hearing began with the trial court confirming that Azeen understood that by entering a no-contest plea, he would be admitting to the facts contained in the indictment. The trial court then reviewed the three counts in the indictment and informed Azeen of the possible penalties for each. Apparently reading directly from the indictment, with respect to the third count, the court explained, "Under the third count of the indictment, this is having a weapon while under a disability, * * * [t]his is a felony of the fourth degree, that definite sentence." The prosecutor responded, "If you want to strike the furthermore clause, it has to be a definite sentence."

**{¶ 34}** Based on that context, it seems apparent that the document to which the parties were referring was not a plea agreement, but the indictment itself. Unfortunately, the indictment was not admitted as an exhibit during the hearing on the motion to dismiss. Thus, there is no evidence before us of what the "furthermore clause" said or whether the charge to which Azeen entered a plea had been amended. This exchange therefore fails to support the idea that Azeen's plea was the result of a negotiated agreement.

**{¶ 35}** The dissenting opinions accuse us of substituting the trial court's factual findings with our own. We do no such thing. In this case, the trial court did not make factual findings. There was no evidence to be weighed; the facts established by the 1987 plea-hearing transcript were undisputed. The problem here is that the trial court drew inferences that were unsupported by those facts. The second dissenting opinion contends that we are engaged in our own speculation rather than "a limited review of the evidence to determine whether the evidence is subject to reasonable inference." Second dissenting opinion at ¶ 69. But we do not decide that the alternative explanations outlined above necessarily reflect what happened off the record. The point is that we don't know what happened off the record, and it is improper to hypothesize that a plea agreement existed without some evidentiary support. Indeed, as the caselaw cited by the second dissenting opinion explains, "We are not justified in inferring, from mere possibilities, the existence of facts." *State v. Jameison*, 421 P.3d 463, 471 (Wash.App.2018), citing *Gardner v. Seymour*, 27 Wash.2d 802, 810-11, 180 P.2d 564 (1947); *see Hurt v. Charles J. Rogers Transp. Co.,* 164 Ohio St. 329, 332, 130 N.E.2d 820 (1955), quoting *Indian Creek Coal & Mining Co. v. Calvert,* 68 Ind.App. 474, 120 N.E. 709 (1918), *denying rehearing,* 68 Ind.App. 474, 119 N.E. 519 (1918) (" 'For the purpose of supporting a proposition, it is not permissible to draw an inference from a deduction which is itself purely speculative and unsupported by an established fact' ").

{¶ 36} In contrast to the speculation engaged in by the dissents and the courts below, the record in this case is completely devoid of any reference to a negotiated plea agreement. This court's criminal rules have long required parties to make a record of a negotiated plea agreement: "When a negotiated plea of guilty or no contest to one or more offenses charged or to one or more other or lesser offenses is offered, the underlying agreement upon which the plea is based shall be stated on the record in open court." Crim.R. 11(F). This rule took effect in 1973, well before Azeen entered his plea in 1987. *See* former Crim.R. 11(F), 34 Ohio St.2d xliv (containing substantially the same language as the current rule); *see also State v. Ballard*, 66 Ohio St.2d 473, 475, 423 N.E.2d 115 (1981), fn. 1 (Crim.R. 11(F) "requires the underlying agreement, in cases where there is a negotiated plea, to be stated on the record in open court"); *State v. Cunningham*, 10th Dist. Franklin No. 73AP-472, 1974 WL 183898 (Apr. 30, 1974) ("A 'plea bargain' in a felony case must be clearly and easily ascertainable under this new rule"). The present case makes the necessity of placing information on the record abundantly clear.

{¶ 37} Each of the reasons cited by the dissents and the lower courts for finding the existence of an agreement is premised on speculation about what had been said off the record and unsupported assumptions about why the parties chose to do what they did on the record. Without a record "show[ing] the existence of the elements of a contract," *see Dye*, 127 Ohio St.3d 357, 2010-Ohio-5728, 939 N.E.2d 1217, at ¶ 23, we are unable to conclude that the state entered into any plea agreement with Azeen.

## IV. Conclusion

{¶ 38} The transcript of the plea hearing indicates that an off-the-record conversation took place regarding Azeen's sentence. As to the content of that conversation, we can only guess. Nothing on the record demonstrates that the state had entered into any plea agreement with Azeen. And in the absence of an agreement demonstrating that Azeen had been induced into offering his plea by a

promise from the state (express or implied) not to further pursue the matter, the state is not barred on that ground from prosecuting Azeen for aggravated murder.

{¶ 39} We therefore reverse the judgment of the court of appeals and remand this case to the trial court for further proceedings. Based on our resolution of this case, it is unnecessary for us to decide whether *Carpenter* should be applied retroactively, so we leave that question for another day.

Judgment reversed<br>and cause remanded.

O'CONNOR, C.J., and KENNEDY, FISCHER, and PIETRYKOWSKI, JJ., concur.

STEWART, J., dissents, with an opinion.

BRUNNER, J., dissents, with an opinion.

MARK L. PIETRYKOWSKI, J., of the Sixth District Court of Appeals, sitting for DONNELLY, J.

––––––––––––––––––

**STEWART, J., dissenting.**

{¶ 40} We accepted this appeal to consider two propositions of law: (1) whether *State v. Carpenter*, 68 Ohio St.3d 59, 623 N.E.2d 66 (1993), can be applied retroactively and (2) whether *Carpenter* applies to unnegotiated no-contest pleas. Appellant, the state of Ohio, charged appellee, Abdul Azeen, with several felony counts, including attempted murder, after he shot Danuell Jackson in 1987. Azeen entered a no-contest plea to those counts. Nearly 30 years later, two years after Jackson died from his injuries, the state indicted Azeen for Jackson's murder. The trial court dismissed the indictment, concluding that the state could not bring additional charges under the test laid out in *Carpenter,* because the 1987 plea agreement would have caused Azeen to believe that all criminal proceedings stemming from the shooting had been finally resolved. The Eighth District Court of Appeals determined that the state forfeited its retroactivity argument because it had failed to raise that issue to the trial court. 2019-Ohio-4677, 143 N.E.3d 162,

¶ 30. The state does not deny that it did not raise retroactivity in the lower court, so I believe that we have improvidently accepted jurisdiction over the first proposition of law.

{¶ 41} The majority does not address the first proposition of law, because it determines that there is no evidence to show that Azeen, entered into a negotiated plea agreement with the state. To reach that conclusion, the majority violates a cardinal principle: this court will not weigh evidence. Nor should we engage in error correction on an issue that will not likely reoccur. *Carpenter* is 28 years old, and cases like it—in which the state seeks further prosecution many years after the initial conviction—will be rare. We should also dismiss the second proposition of law as improvidently accepted.

{¶ 42} "Plea agreements are an essential and necessary part of the administration of justice." *Carpenter* at 61, citing *Santobello v. New York*, 404 U.S. 257, 261, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). "Plea bargaining flows from 'the mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial." *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), quoting *Brady v. United States*, 397 U.S. 742, 752, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Those reasons include the defendant's certainty that the criminal prosecution will terminate and the efficiency in resolving a criminal case without a trial. That said, the benefits of certainty and efficiency work "only if dispositions by [a] plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *see also State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 41 (in plea bargains, "each side bargains away its desired outcome for the benefit of certainty"). "If plea bargaining is to fulfill its intended purpose, it must be conducted fairly on both sides and the results must not disappoint the reasonable expectations of either." *State v. Thomas*, 61 N.J. 314, 321, 294 A.2d 57 (1972).

**{¶ 43}** The majority finds that Azeen failed to show the requisite elements of an agreement because there is no evidence in the record that the parties negotiated in exchange for Azeen's no-contest plea.

**{¶ 44}** The majority overemphasizes the importance of negotiation. "Because the defendant's constitutional rights are at stake in the plea process, the concerns underlying a plea agreement differ from and go beyond those of commercial contract law." *State v. Dye*, 127 Ohio St.3d 357, 2010-Ohio-5728, 939 N.E.2d 1217, ¶ 21, citing *Carpenter*, 68 Ohio St.3d at 61, 623 N.E.2d 66. Plea agreements are "unique contracts" that implicate "the defendant's right to fundamental fairness under the Due Process Clause." *United States v. Ingram*, 979 F.2d 1179, 1184 (7th Cir.1992). A defendant should reasonably expect a plea to terminate the criminal prosecution unless the state specifically reserves the right "to file additional charges based upon the contingency of the death of the alleged victim." *Carpenter* at 61.

**{¶ 45}** So, what did Azeen reasonably expect about future prosecution when he pleaded no contest? Start with the uncontroverted fact that the state failed to affirmatively reserve its right to prosecute Azeen for murder should the victim die. "[A] defendant's subjective expectations regarding a * * * plea are formed by the state's conduct." *State v. Anderson*, 8th Dist. Cuyahoga No. 106304, 2018-Ohio-3051, ¶ 11. This was the basis of our decision in *Carpenter*: a defendant's expectation of finality in entering a plea requires the state to reserve the right to further prosecute the defendant if the victim later dies.

**{¶ 46}** Next, consider that the trial court determined that the sentencing judge had conducted off-the-record discussions with the parties before Azeen entered his no-contest plea. Those discussions included the sentencing judge's representation that Azeen could expect a minimum sentence should he enter a plea. The record does not show that the state objected to the sentence, although it did ask the court to clarify whether Azeen would serve certain prison terms concurrently.

The limited record before us thus shows both that Azeen would have reasonably expected his plea to fully terminate the criminal prosecution and that he agreed to enter his plea based on the sentencing judge's very specific representation of what sentence he would impose should Azeen plead and forgo a trial.

{¶ 47} The majority wrongly disregards Azeen's subjective expectation because it determines that the sentencing judge's representation of what sentence he would impose indicated only the judge's thoughts, not that Azeen and the state had a firm agreement. However, a plea agreement "is basically an implied promise on the part of the state not to prosecute the defendant for any further offenses that may arise out of the same incident." *State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, 806 N.E.2d 542, ¶ 11. As an implied contract, it is " 'shown by the surrounding circumstances which make it inferable that the contract exists as a matter of tacit understanding.' " *Rice v. Wheeling Dollar Savs. & Trust Co.*, 155 Ohio St. 391, 397, 99 N.E.2d 301 (1951), quoting *Hummel v. Hummel,* 133 Ohio St. 520, 525, 14 N.E.2d 923 (1938).

{¶ 48} This case thus presents a mixed standard of review: on contested factual issues relating to the elements of an agreement, we accept the facts as found by the trial court if supported by some competent, credible evidence, but on the application of those facts, we independently review the court's legal conclusions.

{¶ 49} Here, the trial court found as a *matter of fact* that the state, by its silence, "in effect acquiesced to the agreement." When sitting as the court of last resort, we do not weigh the evidence. *State v. Wilson*, 30 Ohio St.2d 199, 204, 283 N.E.2d 632 (1972); *State v. Bradley*, 3 Ohio St.2d 38, 42, 209 N.E.2d 215 (1965). And even if we could weigh the evidence, that does not mean that we should substitute our judgment for that of the trier of fact. When a reviewing court considers whether a factual finding is against the manifest weight of the evidence, it reviews the entire record, " 'weighs the evidence *and all reasonable inferences*, considers the credibility of witnesses and determines whether in resolving conflicts

in the evidence, the jury clearly lost its way.' " (Emphasis added.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 50} The trial court inferred that a contract existed—and that the parties negotiated its terms—based on (1) off-the-record discussions by the sentencing judge and the parties in which the sentencing judge described the sentence that Azeen could expect if he entered a no-contest plea and (2) the state's silence on the sentence suggested by the sentencing judge. These were reasonable inferences, as the court of appeals concluded. It is a basic principle of law that a trier of fact is free to rely on common sense and experience. *State v. Allen*, 73 Ohio St.3d 626, 636, 653 N.E.2d 675 (1995). The trial court could have reasonably inferred that Azeen had no incentive to enter a plea if he thought that the state could later file additional, more serious charges. It would be illogical to conclude that Azeen would have agreed to serve the minimum prison term if he believed that it was "perhaps only the first installment on a lengthier term to be imposed." *State v. Nelson*, 23 Conn.App. 215, 220, 579 A.2d 1104 (1990).

{¶ 51} The majority says that it is not unusual for a trial judge to float a possible sentence as an inducement to obtain a defendant's plea. This conclusion flouts our admonitions that trial judges should avoid injecting themselves into the plea-bargaining process lest the defendant see it as a form of coercion. *See State v. Byrd*, 63 Ohio St.2d 288, 292, 407 N.E.2d 1384 (1980). And the majority's view wrongly penalizes Azeen for the consequences of off-the-record plea discussions held through no apparent fault of his own.

{¶ 52} On the issue of the state's silence to the sentence outlined by the sentencing judge, the majority offers the explanation that the assistant prosecuting attorney may have thought it prudent to defer to the sentencing judge's suggested sentence as a reason for remaining silent when the sentencing judge outlined the sentence that Azeen could expect. But it is equally plausible that the state had some

say in that sentence, given that the trial court found that the state was part of the off-the-record discussions with the sentencing judge before Azeen entered his plea. One would expect the state to have objected to a minimum sentence had it disagreed. There are two plausible theories of what happened off the record. Therefore, this court cannot say, within the confines of a manifest-weight-of-the-evidence review, that the trial court lost its way by determining that the state implicitly agreed to the sentence offered by the sentencing judge.

{¶ 53} We avoid accepting jurisdiction over cases in which a party is asking this court to review a lower court's application of specific facts to a settled legal principle. Such cases—like this one—are "factbound." *Cavazos v. Smith*, 565 U.S. 1, 16, 132 S.Ct. 2, 181 L.Ed.2d 311 (2011) (Ginsburg, J., dissenting). The majority opinion announces no rule of law, nor does it clarify an existing rule of law. Deciding this appeal thus serves no real purpose. Rather than engage in error correction where we weigh the evidence and substitute our assessment of the evidence for that of the trial court, we should dismiss this appeal as improvidently accepted.

———————————————

**BRUNNER, J., dissenting.**

### Overview

{¶ 54} I agree with the first dissenting opinion that there is competent, credible evidence in the record that supports the conclusion that defendant-appellee, Abdul Azeen, entered into a plea agreement at the time of his change-of-plea hearing in 1987. In addition to the evidence identified and relied on by the trial and appellate courts, the transcript from the plea hearing shows that the prosecutor suggested that the trial court could delete a clause beginning with the word "furthermore." The trial court agreed. The transcript does not indicate what document the prosecutor was referring to, but what could it be other than a plea agreement? This evidence contradicts the majority's assertion that the record is

"completely devoid of any reference to a negotiated plea agreement." Majority opinion at ¶ 36. When the prosecutor's statement is viewed alone or with the evidence relied on by the trial and appellate courts, it was more than reasonable for the trial and appellate courts to conclude that Azeen and the state had entered into a plea agreement before Azeen's change of plea. And because there is no evidence that the state reserved the right to pursue future prosecution if the victim were to die, the state impliedly agreed to forgo pursuing homicide charges against Azeen if the victim later died from his injuries. *State v. Carpenter*, 68 Ohio St.3d 59, 623 N.E.2d 66 (1993). Because competent, credible evidence of a plea agreement was presented to the trial court in this matter, I join the first dissenting opinion in full.

{¶ 55} I write separately to raise concerns about several other substantial problems I perceive with the majority opinion's analysis. First, there is a conspicuous absence of an enunciated standard of review, which leaves the impression that the focus of the court seems to be to ensure that a heinous act is punished until no more punishment can be meted out. The majority opinion's analysis—which meanders through hypothetical scenarios addressing whether there was a plea agreement rather than addressing whether competent, credible evidence was presented on which a fact-finder could find that an agreement was reached—leaves readers scratching their heads. Is *Carpenter* now to be applied on a case-by-case basis, with particular facts cementing the framework for legal analysis?

{¶ 56} The majority says that it is applying well-established law, *Carpenter*, to the unique facts of the case, and it finds no evidence that Azeen's 1987 plea was the product of negotiations between the state and Azeen. As a consequence, the majority finds that "the rule announced in *Carpenter* does not prevent the state from prosecuting Azeen on the new murder charge." Majority opinion at ¶ 3. There are two major concerns here: first, the standard of review used by the majority, and second, whether this court is merely performing error correction in applying a

second appellate review when no cogent proposition of law has been posited to clarify how *Carpenter* should apply in a particular situation. Our review, then, involves error correction and no more, and this appeal should therefore be dismissed as improvidently accepted.

{¶ 57} Although the majority opinion does apply *Carpenter* and acknowledge that it is well-established law, it reaches conclusions on the facts of this case—recognizing them as unique—that are different from the trial and appellate courts. However, just because the facts of a case are recognized as unique does not mean that our jurisdiction can be used to make sure the appeal is decided in a way we might think the public would want it to be decided. Since the majority chooses not to dismiss this appeal as improvidently accepted, other issues need to be explored to alert future litigants of the pitfalls of the conclusions reached in the majority opinion.

**Standard of review**

{¶ 58} Our task on appellate review is a nuanced one: Appellate courts do not perform the same function as the trial court and should not determine anew whether or not a plea agreement existed. Rather, appellate courts must simply examine the record to determine whether competent, credible evidence exists that supports the finding made by the fact-finder, the trial court, that a plea agreement did in fact exist. Azeen filed a motion to dismiss the second indictment for the same criminal activity. While appellate review of a Crim.R. 12(C) motion to dismiss an indictment is de novo, *see, e.g.*, *State v. Baker*, 3d Dist. Seneca No. 13-20-12, 2021-Ohio-1004, ¶ 19, in the context of a motion to dismiss a subsequent indictment under *Carpenter*, the analysis involves " 'a synthesis of contract and criminal law in a particular factual setting.' " *State v. Dye,* 127 Ohio St.3d 357, 361, 2010-Ohio-5728, 939 N.E.2d 1217, ¶ 20, quoting *Carpenter*, 68 Ohio St.3d at 61, 623 N.E.2d 66.

**{¶ 59}** Thus, applying *Carpenter* and *Dye,* we must decide whether "a close examination of the record supports the conclusion that a negotiated plea existed within the meaning of *Carpenter.*" *Id.* at ¶ 24. This synthesized contract- and criminal-law review, then, appears to be more akin to other challenges to an indictment, such as speedy-trial challenges, which involve mixed questions of fact and law. Thus, a reviewing court should defer to the trial court's factual findings as long as they are supported by competent, credible evidence. *See, e.g., Dye* at ¶ 15. We also noted this standard in our recent decision in *State v. Long,* ___ Ohio St.3d ___, 2020-Ohio-5363, ___ N.E.3d ___, ¶ 15. Questions of law must be reviewed de novo. De novo review is " 'independent, without deference to the lower court's decision.' " *Baker* at ¶ 19, quoting *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27. The core issue is whether a negotiated plea agreement existed that precludes further prosecution, but this legal conclusion must be based on an evaluation of the evidence.

**{¶ 60}** The trial court's conclusion that Azeen and the state had entered into a plea agreement before Azeen's change-of-plea hearing must be based on competent, credible evidence appearing in the record. To obtain a reversal on appeal based on *Carpenter* and *Dye*, the state must show that there is no competent, credible evidence supporting the trial court's legal conclusion. It is then the task of the reviewing court to thoroughly examine the record to determine whether such competent, credible evidence exists. When an appellate court does this, it considers whether the evidence is competent and credible, examining the evidence for its value to the question at hand, without resolving inferences in favor of one side or the other; if the trial court's decision falls short, such as by entirely disregarding certain evidence or the lack thereof, when measured by this standard, there is cause to reverse the decision. *See State v. Stutzman*, 9th Dist. Wayne No. 19AP0050, 2021-Ohio-995, ¶ 24-25 (Callahan, J. dissenting).

{¶ 61} Here, if competent, credible evidence exists in the record that supports the trial court's factual finding of an agreement, even if that evidence was not relied on by the trial court, our work is done. *State v. Welch*, 8th Dist. Cuyahoga No. 105158, 2017-Ohio-7887, ¶ 24. That is, even if there is a question as to whether the evidence relied on by either the trial or appellate court was sufficient to support a finding that a plea agreement existed, we should affirm if we find the requisite evidence elsewhere in the record. *See id.* (trial court does not abuse its discretion in determining the actual loss suffered by defendant's actions for purposes of restitution, if "competent, credible evidence support[s] its determination").

{¶ 62} The record here strongly indicates that there was competent, credible evidence to support a finding that a plea agreement had been reached and to affirm the trial court on other grounds. In *Dye*, 127 Ohio St.3d 357, 2010-Ohio-5728, 939 N.E.2d 1217, the victim was hit by the defendant, who was driving his vehicle while under the influence of alcohol, rendering the victim a quadriplegic. The victim later died from complications attributed to his quadriplegia. However, when Dye was sentenced for convictions based on new charges brought after the victim's death, this court vacated the sentence, finding competent, credible evidence existed from which an inference could be drawn that a negotiated plea agreement had been reached at the time of the original trial. This court found competent, credible evidence that supported as a matter of law that the state and the defendant had entered a plea agreement. We explained:

> Although the record is limited regarding the plea negotiations in Dye's first case, the transcript of the plea hearing reflects that some form of communication occurred before that hearing during which Dye notified the state that he would plead guilty to [the charges].

*Id.* at ¶ 24.

**{¶ 63}** Here, the discussion with the trial judge before the plea about deleting the word "Furthermore" should, under *Dye*, be deemed competent, credible evidence that supports a conclusion that a negotiated plea agreement existed, as found in *Carpenter*. It appears that the majority has decided that it does not like the way both the trial and appellate courts analyzed the evidence in the record, and instead, it engages in what amounts to error correction with no particularized standard of review. Without basis, the majority takes on the roles of both the trial and appellate courts, examining the record as an appellate court would for competent, credible evidence, but then pivoting to trial-court posture to draw its own inferences before applying *Carpenter* and *Dye*. The majority leans into its view of what inferences are *reasonable*, thereby stepping on the scale to deem some inferences less reasonable and others more reasonable. It is not this court's role to perform the truth function of a fact-finder that the public heavily relies on from trial courts and juries. And setting aside for the moment that we also seem to be performing the role of the court of appeals, which is error correction, even if our jurisdiction were appropriate, our role is to determine, like the court of appeals did, whether there is competent, credible evidence in the record that supports a reasonable inference that a negotiated plea agreement existed.

**{¶ 64}** What is a reasonable inference? The following language from a Washington state court is instructive.

> We struggle in the abstract with what assay to employ when adjudging what reasonable inferences we may deduce from established facts. Therefore, we first comb for definitions and synonyms for our key word "inference." Our state high court has defined an "inference" as a logical deduction or conclusion from an established fact. *Fannin v. Roe*, 62 Wash.2d 239, 242, 382 P.2d 264

(1963). *State v. Aten*, 130 Wash.2d 640, 658, 927 P.2d 210 (1996) refers to a "reasonable and logical" inference, again suggesting that a permissible inference must be logical. A foreign court wrote that a reasonable inference may be defined as a process of reasoning whereby, from facts admitted or established by the evidence or from common knowledge or experience, a trier of fact may reasonably conclude that a further fact is established. *Stambaugh v. Hayes*, 1940-NMSC-048, 44 N.M. 443, 103 P.2d 640, 645. 5 *West's Encyclopedia of American Law* 396 (2d ed.2005) partly defines "inference[s]" * * *:

"Inferences are deductions or conclusions that with reason and common sense lead the jury to draw from facts which have been established by the evidence in the case."

Based on these definitions, we must summon logic, common sense, and experience in surmising additional or circumstantial facts from already established or direct facts. We hope that our experience coincides with common sense and our common sense abides logic.

* * * [A] verdict does not rest on speculation or conjecture when founded on reasonable inferences drawn from circumstantial facts. *State Farm Mutual Insurance Company v. Padilla*, 14 Wash.App. 337, 339-40, 540 P.2d 1395 (1975). This proposition conversely suggests that an inference is not reasonable if based on speculation or conjecture. This observation, however, only begs the question of what constitutes speculation and conjecture.

A court occasionally faces the question of whether the trier of fact may infer only those facts that necessarily or always follow from established circumstances, whether the trier of fact may deduce

those facts likely to have occurred as a result of the underlying circumstances, or whether the trier of fact may even employ inferences that exist as one of many possible inferences. *We conclude that any reasonable inference must likely, but not necessarily, follow from an underlying truth.*

When evidence is equally consistent with two hypotheses, the evidence tends to prove neither. *Stambaugh v. Hayes*, 103 P.2d at 645 (1940). We will not infer a circumstance when no more than a possibility is shown. *Brucker v. Matsen*, 18 Wash.2d 375, 382, 139 P.2d 276 (1943). We are not justified in inferring, from mere possibilities, the existence of facts. *Gardner v. Seymour*, 27 Wash.2d 802, 810-11, 180 P.2d 564 (1947). Some of the decisions we cite entail civil appeals, but the law should demand stricter controls on use of inferences in a criminal case.

* * * Some cases teach that, when drawing inferences, the trier of fact should not isolate discrete facts but instead draw reasonable inferences only after viewing the evidence as a whole. *State v. Sanchez*, 2017 MT 192, 388 Mont. 262, 399 P.3d 886, 890; *State v. Stull*, 403 N.J.Super. 501, 506, 959 A.2d 286 (App.Div.2008).

(Emphasis added.) *State v. Jameison*, 421 P.3d 463, 470-471 (Wash.App.2018). This lengthy but informative passage from *Jameison* directs us to consider five concepts in viewing the evidence in the record before us when applying *Carpenter* and *Dye*.

{¶ 65} First, an inference based on logic must be related to an underlying truth. Second, an inference is not reasonable if it is based on speculation or conjecture. Third, when there are two equally consistent hypotheses, the evidence

28

tends to prove neither. Fourth, the law should demand stricter use of inferences in the criminal context. And fifth, reasonable inferences should be drawn after viewing the evidence as a whole. *See also State v. Gantz*, 106 Ohio App.3d 27, 35, 665 N.E.2d 239 (10th Dist.1995) (" 'we consider the evidence as a whole, and "viewing the evidence in this manner it may be truly said that the total may be a sum greater than its parts." ' *United States v. Fooladi* (C.A.5, 1983), 703 F.2d 180, 184 [quoting *United States v. Flynn*, 664 F.2d 1296, 1304 (5th Cir.1982)]").

{¶ 66} Unfortunately, the majority opinion steps into an area of factual analysis this court should not be assuming. Compounding that mistake, the majority opinion employs a divide-and-conquer approach whereby each evidentiary item from which an inference can be drawn is dismissed one-by-one if that item does not prove—on its own—that Azeen and the state had entered into a plea agreement.

{¶ 67} To illustrate, consider the majority's discussion of the original trial judge's statement, "*I have indicated to your attorney* that you will expect, under the circumstances presented here, I'm going to sentence you to three years actual incarceration and on top of that I'm going to sentence you to five to twenty-five years." (Emphasis added.) The majority insists that this statement can only be understood to convey a literal meaning. It then dismisses this statement on the ground that its literal meaning, on its own, "fails to establish" the existence of an agreement between Azeen and the state. Majority opinion at ¶ 25. The majority errs by failing to allow for a reasonable interpretation of the statement in accordance with *Dye* and by failing to consider the statement in connection with other evidence.

{¶ 68} The majority then states that relying on that statement, and the trial court's imposition of the minimum sentence, "wrongly implies that a trial court has no discretion to impose a sentence without the state's approval." Majority opinion at ¶ 27. But that is not a reasonable or even the only inference that can be drawn from the statement. It would also be reasonable to infer that the trial court made

that statement and imposed only a minimum sentence because it had learned in its off-the-record discussion with counsel that Azeen and the state had entered into a plea agreement, and it approved of that agreement. In fact, that inference is entirely consistent with the majority opinion's observation, based on case law not from Ohio but stretching to Michigan and Florida, that "[i]t is not unusual in criminal cases for attorneys to approach the judge to get an idea of what sentence the judge is likely to impose if their client enters a plea to an offense." Majority opinion at ¶ 27. *Cf. Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void"). The majority opinion should recognize this reasonable inference derived from even its own sources.

**{¶ 69}** The majority speculates that the trial court proceeded immediately to sentencing without requesting a presentence-investigation report for reasons other than that Azeen and the state had entered into a plea agreement before the hearing. But considering the evidence, without actually reaching a conclusion for one side or the other, is precisely what allows us to examine what inferences may be made and thereby determine whether competent, credible evidence exists to support the trial court's conclusion that a plea agreement did exist. *See Stutzman*, 2021-Ohio-995, at ¶ 24-25 (Callahan, J., dissenting). Here, the majority opinion uses speculation to help decide what theory it wants to believe, in order to determine to its own satisfaction whether there was a plea agreement. Speculation abounds concerning the prosecutor's failure to object to the sentence: the majority posits that the prosecutor may not have objected because the prosecutor believed the minimum sentence was appropriate or because the prosecutor had already unsuccessfully argued for a higher sentence in the off-the-record discussion. All of this is speculation, not a limited review of the evidence to determine whether the evidence is subject to reasonable inference. *Id*.; *Jameison*, 421 P.3d at 470-471. The majority's belief that nothing in the record indicates that the victim's injuries

30

had the potential to be fatal is erroneous. The victim was rendered a paraplegic when he was shot by Azeen, and as the majority opinion recognizes, "[t]he prosecutor informed the court that [the victim's] condition 'will probably not improve,' explaining that '[i]f anything, it will deteriorate slowly,' " majority opinion at ¶ 7. Based on this statement alone, it is fair to infer that the state could reasonably have foreseen that the victim might later die of his injuries and that Azeen reasonably believed that his plea agreement would resolve all charges that could arise from the shooting, even if the victim later died from his injuries.

**No evidence of state's reservation of right to file additional charges**

{¶ 70} This court has previously stated that "[t]he essence of [the *Carpenter*] holding is to require the state 'to reserve its right to file additional charges based upon the contingency of the death of the alleged victim.' " *State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, 806 N.E.2d 542, ¶ 9, quoting *Carpenter*, 68 Ohio St.3d at 61, 623 N.E.2d 66. As a practical matter, then, whenever there is a plea agreement in a case in which the victim might later die from injuries caused by the defendant, *the state must* reserve its right to bring future charges.

{¶ 71} In this appeal, there is no dispute over whether the state reserved its right to bring future charges—no one argues that it did so. The issue is whether there was a plea agreement at all. The trial court found that Azeen met his burden of showing that a plea agreement existed; the appellate court agreed, holding that there was competent, credible evidence in the record of such an agreement. Even if it were the role of this court to review that record anew, the majority's conclusion that there is no evidence of an agreement would be erroneous. Inferences are permissible, and here, there exists evidence in the record, especially when considered as a whole, that permitted the trial court to conclude that a negotiated plea agreement existed.

**This case should be dismissed as improvidently accepted**

{¶ 72} As the majority opinion makes clear, nothing in this appeal involves the consideration of a disputed or unclear issue of law. Instead, the entirety of the majority opinion is devoted to determining whether well-established law was correctly applied to the unique facts of this case. In short, this appeal seeks error correction. But our precedent is clear that we do not take cases presenting pure error correction. *See Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 492, 727 N.E.2d 1265 (2000) (Cook, J., concurring) ("According to Section 2, Article IV of the Ohio Constitution, this court sits to settle the law, not to settle cases"). I would therefore dismiss this case as improvidently accepted.

**Conclusion**

{¶ 73} By not recognizing or attending to any enunciated standard of review, the majority opinion fails to afford sufficient deference to the careful work of the trial court in this case. The result of the majority's de novo review also means there was no point to having an intermediate appellate court review this case. That, apparently, was unnecessary.

{¶ 74} Intermediate appellate courts reviewing arguments based on *Carpenter* in particular should not view today's opinion as granting a license to review a trial court's factual conclusions on a de novo basis. Rather, those courts, under *Carpenter* and *Dye*, should simply review the record for competent, credible evidence from which an inference may be drawn concerning the existence of a negotiated plea agreement. The rule of *Carpenter* is not simply a matter of civil contract law. It is applied in criminal cases, cases in which important due-process concerns are implicated—a fact that is apparent in the charge to courts' jurisdiction established by the Ohio Constitution and statute:

32

> Rules of criminal procedure and sections of the Revised
> Code providing for criminal procedure shall be construed so as to
> effect the fair, impartial, speedy, and sure administration of justice.

R.C. 2901.04(B); *see* Ohio Constitution, Article IV. The inquiry into whether a plea agreement exists must be focused on a consideration of the totality of the circumstances, following a thorough review of the record for competent, credible evidence to support a court's factual findings. Only by following these well-established rules can trial and appellate courts give full effect to the decision of *Carpenter*, thereby ensuring that a state's implied promise is enforced and that the defendant's plea ends the matter, even if the victim later dies. Absent the state's reservation of the right to bring new charges for the later death of the victim from the act or acts punished, the original plea and sentence end the matter.

{¶ 75} For these reasons, I respectfully dissent.

————————

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Katherine E. Mullin, Assistant Prosecuting Attorney, for appellant.

Mark Stanton, Cuyahoga County Public Defender, and Erica Cunliffe, Assistant Public Defender, for appellee.

————————